The first case to be argued is Hector Garcia Ortiz v. City of New York, 20-668. We'll hear from Appellant's Counsel. Good afternoon, Your Honors. This is Scott Kornbaum for Mr. Ortiz. This is my first telephonic argument. So when Judge Cote, following the first day of trial, Judge Cote was speaking with the attorneys. The jury had gone for the day, and she had set time limits for the trial. And after the first, she made the following comment, which I think drives this discussion. She said, you know, she's calculating the time. She said, so let me, this is found at page 323 of the Joint Appendix. So let me give you a calculation of the time so far. For the plaintiffs, 2 hours and 6 minutes. For the defendants, 20 minutes. Obviously, this was for a variety of reasons, partly because the defendant has called on the plaintiff's case, which is entirely appropriate, and it was a slow-moving examination. Mr. Lee, referring to Corey Lee, as far as I'm concerned, that is just fine. I like the idea that new counsel, you know, can try cases, particularly when you have such an expert counsel at your side. It is a wonderful way to learn to try a case. That expert counsel on his side was Amir Benow. But after this court reversed Judge Cote's grant of judgment as a matter of law, it wasn't so fine for Mr. Lee to have expert counsel at his side, and Mr. Benow was no longer such expert counsel. And Judge Cote, when calculating the hourly rates for the attorneys, ran afoul, most importantly, of this court's teachings in Farbacco v. Clinton County. And in Farbacco, this court said – because what had happened is the plaintiff's – the district court judge said, you know what, the highest hourly rate in this district is X. I think it was $275 an hour, but for discussion purposes, it really doesn't matter. And she said, no lawyer can go higher. We can't award a higher hourly rate. And so this court, in vacating the decision awarding fees, said, instead, the equation in the case law of a reasonable hourly fee with the prevailing market rate contemplates a case-specific inquiry into the prevailing market rates for counsel with similar experience and skill to the fee applicant's counsel. This may, of course, include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in this district. But the termination of the prevailing market rate in the relevant community also requires an evaluation of evidence proffered by the parties. That is not what Judge Cote did. She latched onto one fact and one fact only, which is that, in her opinion, this case was simple. The entire discussion of the hourly rate can be found at the special appendix from 12 to 7, pages 12 to 17. It's – Farke-Bacco answers this case. It just resolves it. Judge Cote looked at one factor only. Yes, she does get to the degree of success, which I'll get to in a second. And to the exclusion of everything else, she ignores every hourly rate that she cites, called for a higher hourly rate for Mr. Benno and a higher hourly rate for Mr. Lee. She – and really surprisingly, because she's usually a very careful judge, gets it all wrong. So it's just – it doesn't make any sense that where attorneys who are – she recognizes as an experienced civil rights lawyer with seven years more experience is not entitled to a higher hourly rate because, in her view, the case was simple. And I'd be remiss if I didn't mention that the case was really not that simple. If she means by simple, it was not a lot of witnesses and a lot of depositions, that's one thing. But the – she seems to conflate at times simplicity and complexity of the case, but this was a difficult case, which she erred in granting judgment as a matter of law. Just bear with me, please. I just need some water. And a review of some hourly rates, I think, helps demonstrate how wrong she got it. Judge Marrero, in 2010, in a case called Tucker v. The City of New York, you adopted the report and recommendation of then-Magistrate Judge Dollinger. In that case, the plaintiff accepted a Rule 68 offer of judgment for $3,501 plus fees. You adopted the recommendation of an hourly rate for Jeff Rothman, who at the time had eight years of practice, of $350. That was in 2009, for 2009 rates. You approved an hourly rate of $275 for David Rankin, who has – just doing my math – 13 years – I'm sorry, five years less experience or four years less experience than Mr. Benno. But at the time, those were rates were based on being a lawyer two to three years out of law school. Judge Rakoff, in 2013, in a case called Bailey v. Pataki, awards Mr. Benno an hourly rate of $550 based on 2013 rates. Seven years later, Judge Cote awards $300 to Mr. Benno, which is approximately 45% less. This court can take judicial notice, and Judge Sullivan, while a district court judge, has noted, as have others, that rates don't go down. They go up over time. And so how does Judge Cote reach this conclusion that the case was simple? Again, she focuses on the amount of work that, in her view, needed to be performed. That doesn't go to the hourly rate. That goes to the reasonableness of the hours expended. We make clear in our briefs that we disagree with this court's decision in Lilly, but we also recognize that it is the law. But Lilly did not supersede the Supreme Court's pronouncement in Hensley or many of this court's pronouncements that the most significant factor in setting an hourly rate is the degree of success. And for Judge Cote to say that $118,000 in damages, in compensatory damages, didn't represent incredible success is really shocking. Excuse me. You have a minute left. Okay. So I want to get to why this matters. Because in Section – Judge Cote's decision runs completely afoul of the legislative intent of Section 1988, which is that it is the central purpose is to attract competent counsel to public interest litigation. I have an active practice as well. I'm looking at this decision, and I'm like, why am I going to take on this case? It sends a terrible message to the plaintiff's civil rights bar to allow a decision of such a paltry hourly rate for someone of such experience to stand. And there's one other thing I want to talk to just about as far as the hours is concerned. I don't think you could get a more – it suffers from the same thing. She says, in my opinion, 340 hours plus 10 hours for fees for the two attorneys. She just picks this number out of the air. She had great discretion to cut. I get that. But what could be more arbitrary than the following? If I may – just bear with me, please. Vasquez says that $283,000 represents a fair lodestar to Mr. Ortiz. At page 1621 of the joint appendix, Judge Cote, I won't give less than Vasquez's request. But she then gives $70,000 less than Vasquez's request. That is the height of arbitrariness. Just picking numbers out of the air is the height of arbitrariness. There's no case law to support the hourly rate. This court – there's no – she underestimates the amount of time it took. And this court should vacate and remand for a calculation of the lodestar using the methodology this court has articulated in Malaya, among other cases. Thank you. Thanks very much, Mr. Kornbaum. Judge Lynch, do you have any questions? Hello? I'm sorry. I was on mute. I do have one question. Mr. Kornbaum, the number of hours that the judge thought was appropriate was 550. Do I have that right? You know what, Judge? I'm not sure because I just focused on the number of hours for Ms. Shera's Ben-Owen Lake, which was 350, which includes 10 hours. We're not challenging anything Judge Cote did with respect to paralegal time or associate time. I see. Okay, so that 350, even if the rate was $500 an hour, the number would still be $275,000 for the lawyers. No, in fact, if it was $350,000 for the lawyers, I'm sorry, it would be $175,000 for the two lawyers. So even if the rate were substantially higher, if the number of hours was the same, you'd still be within the total load star or the total award that would be given if the judge had actually awarded what the defendants requested. Isn't that right? Had the defendants requested? It would be lower. I'm sorry, I want to make sure I understand your question, Judge. The question basically is, suppose we found that you're right and that the hourly rate should be higher. What if the total amount excepting the number of hours came out to be less than the $290,000 that your fallback argument suggests, which is at least you should have given what the defendants offered in effect? That is correct. It would be less. And I think that's significant for a couple of reasons. One, I think Judge Cote would be hard-pressed to walk back the numbers that she herself has already awarded. But I think it's also significant that the hours that the city recommended, again, not the hourly rates, but the hours the city recommended represent a more accurate view of the work that needs to be done. Because while Judge Cote obviously has an immense amount of experience on the bench, the city has a unit that just defends police misconduct cases. And you sort of have, at least for one attorney, you have a mirror image. They're doing similar work. They know how much work that they're doing. Correct. And then they bring a second attorney on, as they always do, which makes a ton of sense to have a second trial lawyer. Because I firmly believe it's crazy to try a case by yourself. And so, yes, I think the numbers would be higher if there's a higher hourly rate than what the city recommends, obviously what the city recommends, and the city's amount of hours. But you are correct, Judge, as a matter of just math, that if the hourly rates go up but the hours remain the same, then Mr. Benno and Mr. Lee collectively stand to lose some fees. But this is why it's important. It is. It's obviously the case is about Mr. Ortiz and the attorney's relationship with him and the fees ultimately being awarded. But on a macro level, this decision sends a terrible message to the Civil Rights Bar. I hope I've answered your question. I think so. Thank you. Thank you. Judge Marrero? Mr. Kornbaum, bottom line, what do you contend is the proper low spot range that should have been approved by Judge Cote for Mr. Benno and Mr. Lee? And second, do you have other cases, recent cases, where Mr. Benno and Mr. Lee have obtained, approved, low star numbers higher than what Judge Cote approved in this case? More recent cases? Yes. I don't think Mr. Lee has a fee award. While I'll go back and look at their declarations, I don't recall a more recent award. Well, I mean, I have Judge Rakoff's award in Bailey, which was decided in 2015 using 2013 rates where he awarded $550 an hour. We cite a number of cases in our brief beginning at, let me get there, beginning at page 31 and 32. And this really, it applies tremendously, completely to Mr. Benno, but certainly to Mr. Lee. We have Judge Shinlin in 2012. The answer to your question is no for Mr. Lee. I have to go back and look for Mr. Benno. But Judge Morrell, Judge Shinlin awarded an attorney with nine years of experience in general litigation, three of which were in civil rights, an hourly rate of $350. That's in 2012. Judge Woods in late 2015 recognized that $350 was a reasonable hourly rate for an attorney with similar experience to Mr. Lee. That's five years earlier. Judge Fala also in 2015 awarded an attorney with only six years of experience. That's five less than Mr. Lee, an hourly rate of $375. But I'm virtually certain that there's no such other award. I think this was Mr. Lee's first published award. I have to go back with Mr. Benno. Again, we cite to Bailey. I didn't answer you the first question you had, Judge Woods. I don't know what an appropriate hourly rate would be. And I don't know. I have my own views. And I don't know what an appropriate amount of hours is because I had no involvement with the case. My involvement started after the decision. I've read the transcripts. I think Judge Cope minimizes the amount of work that's necessary. And I recognize that particularly when it deals with the amount of hours expended, district court judges, understandably so, have tremendous discretion. Less so with the hourly rate because that's something that an appellate panel can look at itself. And I'm not suggesting it's a de novo review. It's not. What I'm saying is that's more readily, the information is more readily available to the appellate judges. But what I suggest, what we urge the court to do is vacate and have Judge Cote utilizing appropriate hours and taking another look at how much she cut and to calculate the load store again. And, again, what I really hope would happen if the judges, if this court did that is that it would behoove everybody. I think that Judge Cote would say at first is that go settle this. Be grownups and settle it. I'm sure Judge Cote doesn't want to do it again. I'm sure Judge Marrero, if you were as a district court judge, it's got to be one of the least enjoyable things to do as a district court judge is looking over time sheets. I guess that's what law clerks are for. But I think a do over is warranted. Do I think Mr. Benno, well, I'll say one other thing about Mr. Benno and his hourly rate. They won the case because of him. He was tremendous at trial. If you look at the, if you look at his trial transcripts, he took on all the most important witnesses. He was the lead trial lawyer. He handled all the evidentiary issues. And it was because of his skill and working hand in hand with Mr. Lee that they got this tremendous result. I mean, how $118,000 is not viewed as anything but a tremendous result when you have a client who presented as difficult a case, meaning because of who he was and his battles with alcohol. It's just mind boggling. I hope I answered your question, Judge. Thank you very much. At any time that Judge Coates urged these bodies to attempt to settle. Following. I'm sorry. Yes. Following the remand from this court. The record reflects a settlement conference. And I know from speaking with Mr. Lee and Mr. Benno that there was a settlement. It obviously wasn't reached. It was before Magistrate Judge Gorenstein. I was told once where they were. I don't remember where they were. But I do think settlement is in everybody's interest. Thank you. Thank you. Mr. Kornbaum, this is Judge Cabranes. I have just three questions. Sure. Designed to understand the record. You are challenging the district court's award of fees only as to attorneys Benno and Lee. Is that right? Yes. Did both of them serve as counsel of record for these for the entirety of this action? Yes. In practice. Yes. The answer I would have to say is yes. At some point early on in the litigation. And this is spelled out in Mr. Benno's and Mr. Lee's declaration. Mr. Benno had this sort of moving law practice. And Mr. Lee became sort of the lead counsel in the sense that he handled discovery disputes. But Mr. Benno never stopped working on the case. And then once Judge Cope resolved the summary judgment motion, granting it in part, she then scheduled, I don't know if it was a final pretrial conference or a conference. But at some point, Mr. Benno comes back into the litigation serving a new notice of appearance. I don't know why. I don't know why he needed a new notice of appearance. And then from there on, he was lead counsel. I hope that answers your question, Judge. Yeah. And you made a glancing reference to the personal characteristics of Ortiz. We're going to call him Ortiz because that's the way the record has come to us. But, of course, his real name is Garcia Ortiz. In any event, at one point you say this was an outstanding result for any plaintiff, and in particular for Ortiz, who by all metrics was an unattractive and unsympathetic client. And you remember that. I do. Now, is there any authority for us to take into account the personal characteristics of a plaintiff in determining whether the district court erred in its conclusion as to the degree of success achieved? Please allow me to answer it this way. I was in no means demeaning or impugning Mr. Garcia Ortiz or Mr. Ortiz, as the record reflects. What I was suggesting is that because of his personal difficulties, succeeding at trial was immensely difficult. Judge Code exercising her discretion allowed the Assistant Corporation Counsel to cross-examine him with his history of alcohol abuse. She made great use of that. But the answer to your question is, no, you cannot take into account his personal situation. But what you can do, and what this court in Arbor Hill recognizes, is that one of the factors is the level of skill required to perform the legal services properly. And at trial, that meant winning. I read the trial and was like, how the heck did they win? He was highly agitated, highly inebriated, and yet they were still able to convince the jury in what was a very rational verdict to award $118,000. And I think the undesirability of the case, while it may mean certain things, but I think it's the degree of success. And if it's a really hard case to win, that makes the success even greater. And I think that's – so the answer to your question is, yes, not because the person is a good or bad person, but it makes the likelihood of success, as compared to the degree of success, that's a critical factor. It makes it that much harder. Okay. I don't want – Judge Cabanis or any of the judges, I don't want you to think I was impugning the person. I was just – Yes, no, I understand. Okay. Thank you. And you've reserved two minutes, and at that point, Judge Lynch and Judge Marredo may want to follow up on some of these questions. I had a question. At any event, let's hear from Ms. Paulson. I have just one question. Do I now put myself on mute? I guess that would be useful. Okay. Thank you. Ms. Paulson. Thank you. Good afternoon, Your Honors. Susan Paulson on behalf of the city appellees. Your Honors, I essentially want to follow up on the question that Judge Lynch was making and start by pointing out that Mr. Ortiz focuses his argument on the $300 hourly rate awarded to his lead counsel, but failed to acknowledge that the rate effectively awarded was substantially higher. Here, after calculating the presumptively reasonable fee, the district court increased the fee award by 60%, recognizing that the city had proposed a higher amount. If this 60% increase were applied to half the hours awarded to Benno and Lee, so they were applied entirely to Benno, his effective hourly rate would have been $809 an hour. If the 60% increase were applied to the entirety of the 350 hours and, therefore, spread between Benno and Lee, each of their effective hourly rate would be $554. Ortiz makes no argument that either $809 an hour or $554 an hour is not a reasonable hourly rate. Thus, even if he could show, which he cannot, that the court's calculation of the lodestar was unreasonable, he has not shown that the court abused its discretion in awarding 60% more than the presumptively reasonable fee. The court here acted well within its broad discretion in applying the relevant legal standards and conducted the case-specific analysis. The court did not only look at the simplicity, the fact that it was a straightforward Section 1983 claim. As my adversary just acknowledged, the court recognized Mr. Benno's experience and abilities with counsel. The court looked at the prevailing rates in the district. The court recognized the challenges that Ortiz posed as a client, but also looked at the lack of legal or factual complexity and the limited degree of success. Although counsel argues that $118,000 in compensatory damages was a tremendous result, there was an undisputed injury here of a tibial fracture, with an expert witness testified to the $60,000 to $80,000 of medical care that would be necessary to treat it. I believe he suggested it would require a new replacement. So this was not a tremendous result. There was an undisputed injury, and they compensated for that. There was no conscious pain and suffering award. There were no punitive damages. Counsel acknowledged that the district court, with a firsthand view of the litigation, is particularly well suited to evaluate the amount of time spent on the litigation. And here Judge Cote very carefully did that. She assessed the amount of work necessary to achieve the limited victory in this case. She examined the particular hours expended with a view to the specific work product, and she found many of the hours duplicative and unnecessary. She noted that even when not counsel of record, both counsel were billing for time on the case, and that they spent many hours consulting with each other and duplicating or reviewing each other's work. And this is in the context of the fact that there was a total of 10 individuals working on this case, five attorneys and five paralegals. Looking at the litigation as a whole and having experienced it from start to finish, Judge Cote, in her discretion, determined that there was tremendous overbilling in both the rates and the hours expended. She neither based her award on an erroneous view of the law nor on a clearly erroneous assessment of the evidence. And certainly, given the 60% increase that Judge Cote applied to the load star that she calculated, the plaintiff cannot establish that there was an abuse of discretion in this case. And this court should affirm. I'm happy to answer the court's questions. Judge Lynch. Yes, can you hear me? Yes, Your Honor. Okay, thank you, Ms. Paulson. Do you have any explanation or do you see anything in the record that would explain the disparity between the judge's statement that she would not award less than the defendants proposed and the amount that was actually awarded? I really regret to tell you that the answer to that is no, and our trial counsel and our appellate counsel, many of us scoured the record to try to figure out how that discrepancy occurred, whether it was a math mistake or something else. We cannot find anything in the record that indicates, but certainly there's no abuse of discretion and plaintiff makes no argument that there is, but I apologize that we have no explanation for that discrepancy. Well, there's no need to apologize. I'm comforted, actually, because my law clerks and I also did probably not as much work as you did, but did a fair amount trying to see, you know, was there some place where a digit could be misread or a typo or some place where the defendants made some calculation that could have been construed as something else, but we couldn't find anything either. Another question I have, isn't it a fairly common thing for a paying customer to hire a relatively senior lawyer who costs a fair amount and then to save on fees by having a less expensive associate or junior partner do a lot of the prep work and then the senior partner comes back and serves as principal trial counsel assisted by the junior lawyer? Isn't that like, does that happen all the time? Absolutely, Your Honor. I'm going to go back to the question about the fact that Judge Coates saw as the limited universe of facts to be tried, the factual and legal, what she considered simplicity of the case, to bill, instead of allowing, she decided instead of delineating the award as a higher amount for Mr. Benno and a lower amount for Mr. Lee, she decided to construct the award as if a single counsel of a reasonable level of experience to handle this type of civil rights case had handled the case. With respect to the latter point, that brings up the other question I had. You say, what would it take for a lawyer with a reasonable level of experience? I certainly agree that if someone handled this case who was a partner at a big law firm and normally charged $1,500 an hour or something, tried the case, that there has to be a limit to looking at what this particular lawyer's degree of experience and normal billing rates might be. Does that mean that what you do, because I've never seen this in our case law, that what you do is you figure out who's the least experienced, least expensive lawyer in town who could possibly handle this case and award that hourly rate, regardless of the level of experience and skill of the lawyer who actually handled the case? Certainly not, Your Honor, but it was proper for the court to consider what a reasonable paying client would be willing to pay for a case of this nature. The court looked to the prevailing rates in the district of other cases. In Independence Project, the Southern District awarded $400 for an experienced civil rights attorney who had practiced 40 years and had been admitted in the Southern District for 15. In Wright v. City of New York, the prevailing rates for civil rights attorneys were recognized to be between $250 and $350, and the court awarded $300 for an attorney who had worked on more than 136 civil rights cases. So the court was not finding the lowest hourly rate that it could possibly award, but instead it was looking at the nature of the litigation as it had a front row seat to see and contemplated what rate a reasonable paying client would be willing to pay. And the court recognized Mr. Benno's experience and abilities, but nonetheless concluded, in looking at prevailing rates in the district, that $300 an hour was that reasonable rate, and that was a provident exercise in her discretion. Okay, that's all the questions I have. Thank you. Thank you. Judge Marrero? Did you hear me? Yes, Your Honor. I've indicated that I have no questions for the city. Okay. Fine. Thank you very much, Judge. We'll turn then to Mr. Korenbaum, who's reserved two minutes. Thank you. First, it is baffling to me how anybody can conclude that $78,000 in medical expenses is not a tremendous degree of success. So there was undisputed injuries. Well, first, the injuries were disputed, if you look at the closing arguments of the city. And second, if he loses, he doesn't get anything for those undisputed medical injuries. Judge Coates' logic is just lost on me. Then, as far as the blended rates that Ms. Paulson referenced and Judge Lynch did, and I, too, could not find an answer as far as the disparity is concerned. That's why this case matters. There is no senior, experienced civil rights attorney is going to take a case where they know the maximum is going to be $300 an hour. And this is the problem with Lilly. When you focus on the complexity of the case, yes, it's a factor, but it's not the factor. Because then what happens is you're injecting subjective intent as to whether a case is complex or simple or not. Those go to hours. And it really does just deprive plaintiffs like Mr. Ortiz of their choice of counsel. And so it's just not correct. And I think, Judge Lynch, your point was a good one concerning about why should the nature of the constitutional violation drive the plaintiff's right to counsel? And I don't mean it in a criminal case, obviously. Excuse me. You have a minute left. Thank you. And then, just so I'm clear, Judge Coates did not look at all the factors. She says, starting at page 12 of the special appendix, the reasonable hourly rate for principal trial counsel in this case can be no more than $300. There are several considerations. First, this was a very simple 1983 action. She then doesn't discuss any other factors except that it wasn't great success. Why this matters? Because one of the factors this court has articulated in Arbor Hill about that court should consider is awards in similar cases. Let's not kid ourselves. When Mr. Benno puts in another fee application, his next fee application, city's going to say $300, $300, $300. That's what Judge Coates said was reasonable. And the district court judges, I'm sure the city's not going to say, well, they really gave him a blended rate of $552 or whatever the blended hourly rate is. They're going to look at this case. They're going to see that Judge Coates awarded him $300 an hour. Other civil rights attorneys are going to see that they award him $300 an hour, that he got $300 an hour. And they're going to say, really? I'm going to take on a case that is difficult. I think that's a better word than complex. That's difficult because, you know, the client poses problems given his history, and that's not right to the Mr. Garcia-Ortiz's of the world. Thank you. If there are any questions. Thank you very much. Absent any further questions by my colleagues, we will reserve the decision.